UNITED STATES DISTRICT COURT    Eastern District of Kentucky
EASTERN DISTRICT OF KENTUCKY         F I L E D
LONDON

JUN 3 0 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-459-GWU

CARL A. AKERS,                                              PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence. Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th

Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind

shall accept as adequate to support a conclusion;" it is based on the record as a

whole and must take into account whatever in the record fairly detracts from its

weight. Crouch, 909 F.2d at 855.

1

Akers

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

2

Akers

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In

3

Akers

such cases, the agency may be required to consult a vocational specialist.  <u>Damron</u>

<u>v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence

to support the Commissioner's decision may be produced through reliance on this

expert testimony only if the hypothetical question given to the expert accurately

portrays the plaintiff's physical and mental impairments.  <u>Varley  v. Secretary of</u>

<u>Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The administrative law judge (ALJ) found that Akers suffered from obesity,[1]

but could still perform medium level work.  (Tr. 19).  The plaintiff was deemed

capable of returning to his past work as a security guard (Tr. 18, 19).  Thus, his

claims for benefits were denied.  (Tr. 20).

Akers had worked as a security guard from 1992 to 2003.  (Tr. 193).  The

vocational expert (VE) characterized the job as light in exertion and semiskilled, but

did not further describe the job.  (Tr. 210).  In forms he completed the plaintiff

further fleshed out the job.  He indicated that he mainly sat in his vehicle on the job

and watched a strip mine site; he would periodically have to drive "or walk" rounds,[2]

---

[1]The ALJ concluded that Akers' claims of emphysema, hypertension and rhinitis were nonsevere.  (Tr. 16).

[2]The plaintiff argues in his brief that his employer allowed him to make rounds in his vehicle, rather than on foot, as an accommodation to him.  As noted in the discussion <u>infra</u>, there was no indication of any medically-imposed walking or standing restriction for the plaintiff.

4

but the walking and standing only amounted to an hour each total during a shift. (Tr. 62-63). Climbing, stooping, crouching, crawling, or handling large objects were not involved, and the heaviest item he had to carry was only a flashlight. (Tr. 63).

The ALJ gave controlling weight to the opinion of Consultative Examiner Mark Burns. (Tr. 18). Burns conducted a physical examination, after noting complaints of musculoskeletal problems, and opined that Akers' physical examination was within normal limits. (Tr. 92). Although there were complaints of pain, he had been able to perform activities involving sitting, standing, moving about, lifting, and handling objects. (Tr. 92).

Medical Reviewer James Ross had believed the plaintiff's condition was less than "severe" (Tr. 95), an opinion which supports the ALJ's decision.

Records from the Veteran's Administration (VA) addressed Akers' physical status. An EKG done in early 2005 was "normal for an obese patient." (Tr. 129). A chest x-ray showed some incidental findings of mild emphysema, but no acute process. (Tr. 18).[3] Diagnoses of hypertension, headache, obesity and allergic rhinitis were made on occasion (e.g., Tr. 140); however, the headache was noted to be stable on Tylenol (Tr. 141). There were no funduscopic abnormalities related to hypertension noted and the plaintiff's reflexes, gait, heel-to-to walking and standing on one foot were all unremarkable. (Tr. 144). No greater physical

---

[3]The plaintiff was apparently still smoking cigarettes as of 2005. (Tr. 141).

Akers

restrictions than were cited by the ALJ were specifically given by any of the VA medical staff.

VA sources also did not cite any specific mental restrictions.  Staff members indicated that he did not meet the full criteria for post traumatic stress disorder (Tr. 138) and, at an evaluation in 2005 had characterized Akers as alert, oriented and pleasant.  (Tr. 143).

The decision will be affirmed.

This the _30_ day of June, 2006.

G. WIX UNTHANK
SENIOR JUDGE